519 S.E.2d 574

**The STATE, Respondent,**

v.

**Titus L. HUGGINS, Appellant.**

**No. 24993.**

Supreme Court of South Carolina.

Heard Nov. 4, 1998.

Decided Aug. 23, 1999.

Rehearing Denied Sept. 22, 1999.

Assistant Appellate Defender Robert M. Dudek, of South Carolina Office of Appellate Defense, of Columbia, for appellant.

Attorney General Charles M. Condon, Chief Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Donald J. Zelenka, all of Columbia, and Solicitor Ralph J. Wilson, of Conway, for respondent.

PER CURIAM:

Appellant was convicted of capital murder, armed robbery, and conspiracy and received concurrent sentences of five years (conspiracy), twenty-five years (armed robbery), and death (murder). The sole aggravating circumstance was that the murder was committed while in the commission of a robbery while armed with a deadly weapon. This opinion consolidates appellant's direct appeal and our mandatory review pursuant to S.C.Code Ann. § 16–3–25 (1985). We affirm.

Appellant was convicted of murdering and robbing Mrs. Weaver, the operator of the local grocery/liquor store, as she entered her home with the day's receipts. The evidence showed Aaron Hill suggested Mrs. Weaver as the robbery target, and that he was present at the scene. Hill maintained he hid and watched as appellant committed the robbery they had planned, and then as appellant unexpectedly shot the victim.[1] Appellant gave a statement that Hill was present and actually did the robbing and shooting. On appeal, appellant raises only sentencing issues.

■ Appellant first argues he was entitled to have the judge direct a life sentence because the State failed to produce any evidence of aggravation in the sentencing phase of the trial. The State instead chose to introduce only "Victim Impact" evidence, and did not formally reintroduce the guilt phase evidence. We find no reversible error.

Appellant's directed verdict motion was denied because the trial judge ruled that the guilt phase evidence "carried over" to the sentencing phase. Appellant contends this ruling was

---

1. Appellant and Hill were originally tried together: Appellant was convicted of murder, armed robbery, and conspiracy while Hill was acquitted of murder but convicted of armed robbery and conspiracy. Juror misconduct led to a mistrial for appellant, but Hill did not seek one and his convictions stood. At this second trial, Hill invoked his 5th Amendment right to refuse to testify, and consequently his testimony from the first trial was read into the record.

incorrect.[2] This issue has already been decided adversely to appellant's position.

In *State v. Shaw*, 273 S.C. 194, 255 S.E.2d 799 (1979) *subsequent history omitted*, this Court held:

> The purpose of the bifurcated trial proceeding is to permit the introduction of evidence at the pre-sentence hearing that normally would be inadmissible at the guilt determination proceeding. The pre-sentence hearing is for the introduction of additional evidence in extenuation, mitigation or aggravation of punishment. The statute does not exclude from the consideration of the sentencing authority any evidence received at the guilt determination stage. To the contrary, the sentencing authority is required to consider all the evidence received at the guilt determination stage regarding the circumstances of the crime and the characteristics of the individual defendant together with additional evidence, if any, in extenuation, mitigation or aggravation of punishment.

Although it is customary for the State to formally reintroduce the guilt phase evidence at the beginning of the sentencing phase, this formality is not required by statute or case law. We affirm the trial judge's refusal to direct a life sentence.

█ Appellant next argues the court committed reversible error in refusing to allow him to introduce certain evidence in the sentencing phase. Specifically, appellant wanted to introduce the fact that he had briefly been released on bond [3] after being served with notice of intent to seek the death penalty, and that he did not flee during that period. He offered this evidence in mitigation, to show his good character.

Appellant was permitted to introduce evidence that he was briefly bonded out of jail. The jail record keeper testified to the dates of appellant's release and his bail bondsman testified he had no trouble contacting appellant while he was out on

---

**2.** To the extent appellant now argues in brief that his sentencing phase was unconstitutional because the State focused solely on the character of the victim and not on the individual characteristic of the crime and the appellant, his argument is procedurally barred since it was not raised below. *State v. Gardner*, 332 S.C. 389, 505 S.E.2d 338 (1998).

**3.** This Court found error in the order releasing appellant on bond and therefore he was reincarcerated.

bond and no trouble picking him up when bond was revoked. Appellant then sought to introduce into evidence the "notice of intent" which had been served prior to his release, and related documents in order to establish an evidentiary basis for his mitigation argument. *See, e.g., State v. Cannon,* 229 S.C. 614, 93 S.E.2d 889 (1956) (counsel must confine argument to evidence and fair inferences in the record). The trial judge held that since appellant's release on bond had been predicated on an error of law, and since the bond was quickly revoked when the error was discovered, the whole issue of the bond and the notice were "too confusing", and refused to admit the documents. He also held the "fact" the State had sought the death penalty was already before the jury.

In her closing argument, appellant's attorney stated, without objection:

One fact, one series of facts, I do think, speak to [appellant] also. No question he was arrested for murder, armed robbery and conspiracy. He was given notice by the State of South Carolina "We intend to seek the death penalty.", [sic] and he knows this. He is released on bond on April 2nd. He is returned to the jail on April 8th. He is out for that period of time knowing the State wants to seek the death penalty. The bondsman had daily contact with him and had no problem picking him up and returning him to jail when he was so directed.

■ Assuming the trial judge erred in refusing to admit the actual notice of intent to seek the death penalty and the other documents into evidence, appellant simply cannot show prejudice since he was permitted to make the mitigation argument he sought. Error without prejudice does not warrant reversal. *State v. McWee,* 322 S.C. 387, 472 S.E.2d 235 (1996).

■ As noted above, appellant and Hill admitted conspiring to rob Mrs. Weaver, and each blamed the other for the actual robbery and murder. In the penalty phase of this second trial, appellant proffered the testimony of Leonard Hemingway and James Lawrimore in an attempt to shift blame onto Hill. Hemingway testified that two days prior to Mrs. Weaver's murder, Hill had fired a gun at him in a dispute over food stamps. Appellant argues this evidence was relevant to the statutory mitigating circumstances that he was a relatively

minor participant in a murder committed by Hill because it showed Hill was quick to fire a gun. The trial judge refused to admit Hemingway's testimony, finding it irrelevant.

Evidence is relevant if it tends to make more or less probable a fact in issue. *State v. McWee, supra.* The relevancy of evidence is an issue within the trial judge's discretion. *Id.* We find no abuse of discretion here. Hemingway's testimony is simply not relevant to the circumstances of Mrs. Weaver's death. Further, appellant's own statement negates any contention that he was a "minor participant" in the crime, regardless which individual was the actual shooter.

Appellant also proffered the testimony of Lawrimore that three or four years before Mrs. Weaver's death, Hill shot Lawrimore over a trivial incident. This evidence was excluded on grounds of remoteness. Again, appellant cannot show an abuse of discretion nor any prejudice since there is simply no evidence he was a minor participant in the crime, and Lawrimore's testimony was simply not probative of any fact in issue. *State v. McWee, supra.* We find no error in the trial judge's refusal to admit Lawrimore's testimony.

Finally, the record in this case shows it was prosecuted not by the elected solicitor, but by two individuals identified as "Special Prosecutor John Hilliard" and "Special Prosecutor Thomas J. Rubillo." No objection was made at trial to their role, although appellant raises numerous objections on appeal. It is well-settled that issues may not be raised for the first time on appeal. *State v. Gardner, supra.* There is nothing in this record regarding the propriety of the participation of these attorneys for our review.

## PROPORTIONALITY REVIEW

We find the sentence imposed here is proportional to the one imposed *State v. Patterson,* 324 S.C. 5, 482 S.E.2d 760 (1997) (prior and subsequent history omitted). Accordingly, the conviction and sentence are

AFFIRMED.